# CIRCUIT COURT FOR HAMILTON COUNTY
## State of Tennessee



JAMIKA A MOBLEY,                          §
                                          §
                 *Plaintiff,*             §
                                          §
~v~                                       §      No. 13C917
                                          §
CITY OF CHATTANOOGA,                      §      **JURY DEMAND**
                                          §
FORMER OFFICER ADAM COOLEY,               §
In his official capacity as an            §
agent for the City of Chattanooga         §
and in his individual capacity,           §
                                          §
                 *Defendants.*            §

## COMPLAINT

**Introduction:**

1.     This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and

1988 to redress the deprivation of rights secured to the plaintiff by the Fourth, and Fourteenth

Amendments to the United States Constitution, and for violations of the common law of the State

of Tennessee by the defendants, Adam Cooley.

2.     Plaintiff avers that the individually named officer, Adam Cooley ("Cooley") of

the City of Chattanooga ("City") made an unreasonable seizure of the plaintiff.

3.     In addition, plaintiff avers that Cooley assaulted, battered, and humiliated the

plaintiff, and maliciously prosecuted plaintiff.

4.     Plaintiff also maintains that Cooley committed these violations and torts as a

result of policies, customs, and/or procedures of the City.

**Jurisdiction and Venue:**



EXHIBIT
A

Defendant Copy

~ 1 ~

5. This is an action to redress the deprivation of rights secured to the plaintiff by the First, and Fourteenth Amendments to the United States Constitution (enforceable through 42 U.S.C. § 1983) and for violations of Tennessee statutes and common law. Thus, as to the § 1983 claims, this Court is vested with original jurisdiction pursuant to the authority stated in Haywood v. Drown, 556 U.S. 729 (2009). This Court is vested with original jurisdiction over the state claim pursuant to TENN. CODE ANN. § 16-10-101, et seq.

6. Venue is proper in this Court pursuant to TENN. CODE ANN. § 20-4-102. All acts complained of occurred within Hamilton County.

    a. Plaintiff is a resident Hamilton County, Tennessee.

    b. To the best of plaintiff's knowledge and belief, Cooley is a resident of Hamilton County, Tennessee.

    c. City is a political sub-division of the State of Tennessee.

**The Parties:**

7. At all times relevant to this cause of action, plaintiff was an African-American citizen of the United States partaking of the goods and services of various businesses in downtown Chattanooga.

8. At all times relevant to this cause of action, the City is a political sub-division of the State of Tennessee organized and existing under the laws of the State of Tennessee.

    a. The City finances its law enforcement department and provides rules and regulations for the operation of the department.

    b. The City provides oversight of the hiring, training, discipline, and retention of all personnel in its law enforcement department.

~ 2 ~

9. Specifically, and at all times relevant to this cause of action, the City is responsible for the creation and maintenance of its police department, which is a law enforcement agency created under Tennessee state law and regulated by the laws of the State of Tennessee as to:

a. The training and certification of its law enforcement employees;

b. The safe confinement and treatment of prisoners placed within the custody of its individual officers and agents;

c. To create rules and regulations to properly identify officers who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and the City on notice of officers who are a threat to citizens within its jurisdiction;

d. To create rules and regulations to properly investigate officers who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and the City on notice of officers who are a threat to citizens within its jurisdiction; and

e. Not to hire, retain, re-hire, or promote police officers who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and the City on notice of officers who are a threat to citizens within its jurisdiction.

10. At all times relevant to this cause of action, Cooley was employed by the City as a police officer, and he acted under the color of law, statute, ordinance, regulation, custom, or usage. In addition:

~ 3 ~

a. At all times relevant to this cause of action, Cooley acted in his official capacities as agent, servant, and employee, as defined under TENN. CODE ANN. § 29-20-102, for the City. Plaintiff sues Cooley in his individual and official capacities.

**Factual Basis of Complaint:**

11. On May 11, 2013, plaintiff was with her friends at the "Big Chill," a business located in the downtown of Chattanooga. An employee of the Big Chill assaulted plaintiff.

12. Cooley approached plaintiff and told plaintiff and her friends to leave the Big Chill.

13. Plaintiff insisted Cooley take her report of the assault by the Big Chill employee.

14 Cooley refused plaintiff's request.

15. Plaintiff told Cooley she was going to call for another officer to take her report.

16 Without warning, Cooley grabbed plaintiff's left arm, and jerked her left arm upward. Cooley's actions were the direct and proximate cause of the injury, pain and mental suffering plaintiff suffered thereafter. Other City officers were present, and observed Cooley's actions but did nothing to stop Cooley or report his actions to higher authority.

17. Without probable cause and solely from anger at plaintiff's requests to speak to another officer to take her report, Cooley charged plaintiff with disorderly conduct and assault.

18 On August 23, 2012, the State of Tennessee, through the office of the District Attorney, dismissed the charges Cooley brought against plaintiff, and the Court of General Sessions entered a final judgment of dismissal on February 13, 2013. Plaintiff avers the authority set forth in the US Supreme Court decision of Heck v. Humphries set the applicable and operative statute of limitation date to begin at February 13, 2013, but no later than August 23, 2012.

~ 4 ~

**City's Liability:**

19. The City has a pattern of overlooking or providing excuses and reasons to justify the misconduct of its officers and civilian employees in order to retain, promote, and/or re-hire officers.

    a. The City, through its police command officers, refused to relieve former assistant police chief Jeanie Snyder of all duties after three much publicized events wherein [1] she appeared under the influence while armed and in a Gwinnett County, Georgia mall whereupon City police officers drove to said county and took Snyder back to Tennessee; [2] was wandering about in a Marion County wood which required a large law enforcement response to find her at much costs to the Tennessee taxpayers; [3] found unconscious at her home due to prescription drug use after she failed to report for a staff meeting.

    b. The City refused to follow the recommendations of its own Internal Affairs unit to discipline Captain Edwin McPherson for untruthfulness after the investigators found McPherson took actions to interfere with a murder investigation that involved his niece as a suspect. The City's command "cleared" McPherson without review by an entity outside of the police department.

    c. The City refused to fire Detective Karl Fields after he made false claims that he was a victim of a carjacking in order to cover up that he wrecked his car while drunk and shooting his gun. The City allowed Fields to remain as a homicide investigator, despite his obvious deceit that could have caused an innocent person to be charged with carjacking.

d.      The City fired, then, rehired officer Steven Campbell for his part in the
infamous beating of two handcuffed suspects in the parking lot of Kanku's gas
station, which resulted in a settled federal lawsuit the US Dist. Court in McCallum and
Jones v. City of Chattanooga, et al . The City later assigned Campbell to the
S.W.A.T. team for the City and assignment as an investigator/detective.

e.      The City suspended, but did not fire Officer Mike Wenger for his unlawful
assault on one of the two men in the aforesaid Kanku's incident which resulted in
Trent Jones' receiving a facial fracture. Rather than fire Wenger, the City
later promoted Wenger to a detective position.

f.      The City refused to fire former detective Kenneth Freeman for his video-
recorded assault of a 71 year old greeter at Wal-Mart, which resulted in in Walker
v. City of Chattanooga in federal court. The video also captured Freeman shoving a
person who came to the aid of the greeter through a glass door. Edwin McPherson was
present and stood by. Despite the clear video evidence of the assault, and video evidence
of Freeman assaulting an attorney in the Hamilton County Courthouse, the City allowed
Freeman to remain a detective. Freeman had a long history of citizen and internal
complaints that placed the City on notice of his propensity for misconduct. Despite the
long history and the video evidence of assault on two persons at Wal-mart and the
attorney (Lloyd Levitt), it wasn't until a non-video recorded claim of domestic assault
against Freeman arose that the City finally terminated Freeman's employment. The City
never took action to address McPherson's failure to render aid to the greeter or to stop
Freeman from injuring the greeter.

~ 6 ~

g.      The City fired officers Steven Miller and Daniel Gibbs for macing then placing a homeless man, Robert Williams ("Williams"), in the trunk of Gibbs' police car and transporting Williams to Camp Jordan Park in East Ridge, where the officers left Williams by the side of the road. Despite firing these two officers for excessive force and lying about the incident the City rehired allowed these two officers to return to their employment as police officers.

h.      The City will not take action against its officers for misconduct unless such action has overwhelming evidence. Including the video-recorded incidents stated herein, the City took action against Officer David Campbell only after video evidence showed Campbell abusing William Boston.

i.      The City routinely refuses to allow litigants to review the complete closed files of internal affairs investigations to determine what percent of complaints by citizens against officers involved use of force. In Luther v. City of Chattanooga, filed in this Court in case number 1:12-cv-00345, the City did sustain a violation of "improper procedure" against defendant Blumenberg, but cleared him of excessive force. A finding of excessive force carries greater liability under § 1983, and the City has used findings of non-excessive force misconduct in past force and arrest incidents in the following matters (stated above): Steven Campbell; David Campbell; and Blumenberg.

j.      The City was aware of repeat excessive force complaints against Cooley, but cleared him each time and allowed him to remain on full duty despite the repeated excessive force complaints.

~ 7 ~

k.  CPD Sgt. D. Turner ("Turner"), was the supervisor of Cooley. The City requires

its officers to write use of force reports whenever its officers use force on a suspect. Since

Turner became the supervisor for Cooley, Turner's shift saw a large increase in the use of

force. This high and sudden rise in the use of force put the City on notice that its officers

were not properly supervised and trained, and thus constituted deliberate indifference that

was the direct and proximate cause of plaintiff's injuries.

l.  The City had possession of a video of an incident, which is the subject of Tatum

v. City of Chattanooga, et al. (pending in US District Court) and which shows Cooley and

two other officers beating Tatum. Despite having this overwhelming evidence, the

City allowed Cooley, and the two other officers to remain on full duty as police officers.

Not until Tatum made an internal affairs complaint in September 2012 and not until the

City obtained a conviction of Tatum for assault after withholding the entire video

evidence from plaintiff's defense counsel (Mike Acuff) did the City take action against

Cooley and one of the two other officers (Sean Emmer) in the form of termination of

employment.

**Paul Page**

m.  Former Mayor Ron Littlefield ("Littlefield") hired his friend Paul Page as the
director of the City's General Services.

n.  While employed as an agent for the City, Page was actively engaged in acts of
sexual harassment against female City employees and one non-employee.

o.  Despite Littlefield's full knowledge of Page's misconduct, the City failed to take
action to stop Page's wrongdoing beyond a meager warning and requirement

~ 8 ~

p.     Rather than take action against Page, the City terminated the employment of one of the women who complained against Page.

q.     Despite a finding by the EEOC that Page's misbehavior (which included comments to the female employees about their breasts and comments about sex acts) constituted violations of federal law, the City stood by Page and refused to fire him.

**The Timothy Hicks – Emmer Incident:**

r.     In 2011, former officer Sean Emmer and other officers arrived at Track 29, a downtown music venue in response to calls from Track 29 security staff.

s.     One of the officers approached Richard Wetherbee from behind and without warning, used a taser on him.

t.     Emmer came behind Timothy Hicks ("Hicks") and without warning, placed a chokehold on Hicks.

u.     Hicks was unaware a police officer placed the chokehold on him, and attempted to defend against the attack.

v.     Emmer and another officer slammed Hicks to the floor.

w.     Emmer straddled Hicks, and punched Hicks in the face and bashed Hicks' head on the concrete.

x.     The other officer held Hicks down and did nothing to stop Emmer's assault.

y.     The group of people who watched began to "boo" Emmer's actions.

z.     Emmer slapped Hicks' face to make Hicks "come to."

aa.     At one point, Emmer pulled his service weapon and pointed it at the group and told them to stay back.

bb.    Other officers on the scene also directed the onlookers back and did nothing to stop Emmer's assault.

cc.    Emmer and another officer dragged Hicks by his ankles to a police car.

dd.    The transporting officers "screen tested" Hicks on the way to the hospital in a police car.

ee.    "Screen test" is a term to denote how police with a handcuffed and un-seat-belted arrestee in the back seat speed up then slow suddenly, which throws the arrestee into the screen that divides the officers in the front and the arrestee.

ff.    Hicks suffered seven fractures to bones in his face.

gg.    The very next day, Chief of Police Bobby Dodd ("Dodd") spoke publicly about how Hicks "sucker punched" Emmer, and Hicks deserved "the toughest penalty."

hh.    The City never conducted an investigation of the event with Hicks before Dodd publicly cleared all the officers involved.

ii.    Dodd and Internal Affairs investigators were aware Emmer had a propensity to use excessive force in that Emmer had three excessive force complaints even before the Hicks matter.

jj.    In one incident, where Emmer punched a drunken man, which split the man's tongue, Emmer explained his actions by stating, "My adrenaline gets going."

ll.    In each of the three cases and the Hicks matter, fellow officers collaborated Emmer's reasons for the force he used, and the City exonerated Emmer each time.

20    The failure of the City's highest ranking police officers to remove officers from duty when they exhibit gross misconduct, exhibit odd behavior, and allow officers fired to later return to their jobs or even promote them later constitutes a deliberate indifference to the public at large and created the atmosphere that allowed the defendants in the case at bar to believe their conduct would go unpunished and was the direct and proximate cause of plaintiff's injuries.

a.    Such conduct by the City through its police command ranks establishes the City cares more about its officers than the public at large, even when its officers persist in conduct that reflects inability to perform duties, and malfeasance of performance.

b.    Such conduct by the City through its police command ranks establishes the City cares more about its officers than the public at large, despite recommendations for discipline by its own police personnel tasked with investigating police misconduct.

c.    Such conduct by the City through its police command ranks establishes the City allows "procedures" to clear officers charged with misconduct that are solely in the hands of the police command rank officers, and is tantamount to a sham of internal oversight of its police personnel.

21    The City's failure to take prompt action against Page, and its retaliation against the women who complained about Page, constitutes a deliberate indifference to the public at large and created the atmosphere that allowed Cooley to believe his conduct would go unpunished and was the direct and proximate cause of plaintiff's injuries.

22    The failure of the City to discipline Page, a friend of the former mayor, reveals a systemic culture of depravity and indifference to the laws of the land and the rights of all persons

~ 11 ~

within the corporate limits of the City of Chattanooga that permeated to all levels of employees of the City a belief that misconduct was tolerated by the highest levels of City government and thus, would not be reported and punished, and such indifference was the direct and proximate cause of the Plaintiff's injuries and suffering.

   a. The refusal of the City to take action against Page, and its retaliation against the female employee, and the subsequent defense of Page through its Office of the City Attorney (specifically attorney Ken Fritz) against the EEOC's overwhelming evidence of sexual misconduct by Page created a parallel culture of fear of reprisal among those officers and employees who would report the malfeasance of Cooley as stated herein.

   b. Such a culture solidified the "wall of silence" Plaintiff has set forth in this Complaint by all officers named in this Complaint, and is the direct and proximate cause of Plaintiff's injuries and suffering.

23. The City's training in the use of force continuum and its procedural policies do not mirror one another. The conflicts of the training and policies on the use of force created an ambiguity that took the supervisory and training obligations from the City and placed them in the hands of individual officers. Such lack of oversight constitutes the deliberate indifference of the City and was the direct and proximate cause of plaintiff's injuries.

## Count One:
## Violation of Civil Rights Under
## Color of Law 42 U.S.C. §1983

24. Pursuant to Rule 10 of the Tennessee Rules of Civil Procedure, the Plaintiff reasserts and incorporates fully all averments stated in this Complaint as if fully set out herein.

$\sim 12 \sim$

25. The force used by Cooley amounted to unlawful force that carried a high risk of causing bodily harm, was unnecessary and unreasonable under the circumstances, was without probable cause, and was the direct and proximate cause of Plaintiff's injuries, needless suffering, and loss of enjoyment of life. No reasonable officer would have acted as Cooley.

26. Cooley acted under color of law and his negligence and intentional acts deprived the plaintiff her rights secured to her under the United States Constitution to be free from:

    a. Unreasonable seizures of persons without due process of law and deprivation of Equal Protection under the law.

27. The City had a duty of care to the plaintiff to ensure that is agents were properly trained in the use of force, to train and ensure its supervisors do not overlook sudden rises in the use of force by its police officer employees, and to prevent officer abuse of suspects. This failure constitutes deliberate indifference by the City and was the direct and proximate cause of plaintiff's injuries.

28. The City had a duty to properly supervise its officers and to ensure its supervisory officers do not condone unnecessary force by officers in their dealings with the public. This failure constitutes deliberate indifference by the City and was the direct and proximate cause of plaintiff's injuries.

29. The City had a duty to properly investigate and remove officers who display erratic behavior, unwarranted aggression towards citizens, and who concoct and fabricate false police reports that may have led to the prosecution of an innocent man. This failure constitutes deliberate indifference by the City and was the direct and proximate cause of plaintiff's injuries.

30. Consequently, the actions stated in this Complaint created an environment that allowed Cooley to believe his abusive behavior would not be properly monitored, investigated,

$\sim 13 \sim$

nor punished. Or if punished, done so lightly or, if terminated, would get re-hired at a later date. And as stated herein, the City's antics with Paul Page created an atmosphere of fear among officers who would report misconduct as stated herein. These failures constitute deliberate indifference by the City and were the direct and proximate cause of plaintiff's injuries.

31. Plaintiff avers that such actions and omissions on the part of the defendants constitute a violation of § 1983 and were done to deprive the Plaintiff of the following rights established under the United States Constitution:

> a. The right to be free from unreasonable seizures secured to her by the Fourth and Fourteenth Amendments;

> b. The right to Equal Protection of law.

32. Cooley committed these actions with actual malice toward the Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of the Plaintiff. Thus the Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

33. The omissions of the City constitute deliberate indifference toward the Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of the Plaintiff. This failure constitutes deliberate indifference and was the direct and proximate cause of plaintiff's injuries. Thus the Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

## Count Two:
## Malicious prosecution

34. Plaintiff incorporates fully all averments stated in this Complaint as if fully set out herein and avers that such actions and omissions on the part of Cooley constitutes a violation of this common law of Tennessee. In addition, Cooley prosecuted Plaintiff for the crime of

$\sim 14 \sim$

disorderly conduct and assault without probable cause, and out of anger for her insistence to speak to another officer rather than Cooley vindication of a public right.

WHEREFORE, the plaintiff demands judgment against the defendants and requests the following relief:

A.    The Court to award compensatory damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000) and punitive damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000);

C.    That the Court award attorney's fees;

D.    That the Court award costs, and discretionary costs;

E.    Any other relief the Court may deem fit and proper;

F.    Any other relief the Court may deem fit and proper pursuant to 42 U.S.C. §1988, and

G.    Allow a jury trial on all issues.

Respectfully submitted,

By: _____

**ROBIN RUBEN FLORES**
TENN. BPR #20751
GA. STATE BAR #200745
Attorney for Plaintiff
4110-A Brainerd Road
Chattanooga, TN 37411
423 / 267-1575  fax 267-2703
robinflores@comcast.net

**CIRCUIT COURT FOR HAMILTON COUNTY**
**State of Tennessee**

FILED IN OFFICE

2013 JUL 15 PM 1: 06

PAULA F. THOMPSON, CLERK

BY_____DC

JAMIKA A MOBLEY,                            §
                                           §
                    *Plaintiff,*            §
                                           §
~v~                                        §       No. *13 - C - 917*
                                           §
CITY OF CHATTANOOGA,                        §       **JURY DEMAND**
                                           §
FORMER OFFICER ADAM COOLEY,                 §
In his official capacity as an              §
agent for the City of Chattanooga           §
and in his individual capacity,             §
                                           §
                    *Defendants.*           §

## AMENDED COMPLAINT

Plaintiff amends her Complaint to reflect the correct date of the incident at issue as
follows:

**Introduction:**

1.      This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and

1988 to redress the deprivation of rights secured to the plaintiff by the Fourth, and Fourteenth

Amendments to the United States Constitution, and for violations of the common law of the State

of Tennessee by the defendants, Adam Cooley.

2.      Plaintiff avers that the individually named officer, Adam Cooley ("Cooley") of

the City of Chattanooga ("City") made an unreasonable seizure of the plaintiff.

3.      In addition, plaintiff avers that Cooley assaulted, battered, and humiliated the

plaintiff, and maliciously prosecuted plaintiff.

4.      Plaintiff also maintains that Cooley committed these violations and torts as a

result of policies, customs, and/or procedures of the City.

**Jurisdiction and Venue:**

~ 1 ~

5. This is an action to redress the deprivation of rights secured to the plaintiff by the First, and Fourteenth Amendments to the United States Constitution (enforceable through 42 U.S.C. § 1983) and for violations of Tennessee statutes and common law. Thus, as to the § 1983 claims, this Court is vested with original jurisdiction pursuant to the authority stated in <u>Haywood v. Drown</u>, 556 U.S. 729 (2009). This Court is vested with original jurisdiction over the state claim pursuant to TENN. CODE ANN. § 16-10-101, <u>et seq</u>.

6. Venue is proper in this Court pursuant to TENN. CODE ANN. § 20-4-102. All acts complained of occurred within Hamilton County.

    a. Plaintiff is a resident Hamilton County, Tennessee.

    b. To the best of plaintiff's knowledge and belief, Cooley is a resident of Hamilton County, Tennessee.

    c. City is a political sub-division of the State of Tennessee.

**The Parties:**

7. At all times relevant to this cause of action, plaintiff was an African-American citizen of the United States partaking of the goods and services of various businesses in downtown Chattanooga.

8. At all times relevant to this cause of action, the City is a political sub-division of the State of Tennessee organized and existing under the laws of the State of Tennessee.

    a. The City finances its law enforcement department and provides rules and regulations for the operation of the department.

    b. The City provides oversight of the hiring, training, discipline, and retention of all personnel in its law enforcement department.

9.     Specifically, and at all times relevant to this cause of action, the City is responsible for the creation and maintenance of its police department, which is a law enforcement agency created under Tennessee state law and regulated by the laws of the State of Tennessee as to:

a.     The training and certification of its law enforcement employees;

b.     The safe confinement and treatment of prisoners placed within the custody of its individual officers and agents;

c.     To create rules and regulations to properly identify officers who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and the City on notice of officers who are a threat to citizens within its jurisdiction;

d.     To create rules and regulations to properly investigate officers who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and the City on notice of officers who are a threat to citizens within its jurisdiction; and

e.     Not to hire, retain, re-hire, or promote police officers who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and the City on notice of officers who are a threat to citizens within its jurisdiction.

10.     At all times relevant to this cause of action, Cooley was employed by the City as a police officer, and he acted under the color of law, statute, ordinance, regulation, custom, or usage. In addition:

~ 3 ~

a.   At all times relevant to this cause of action, Cooley acted in his official

capacities as agent, servant, and employee, as defined under TENN. CODE ANN. § 29-20-

102, for the City. Plaintiff sues Cooley in his individual and official capacities.

**Factual Basis of Complaint:**

11.   On May 11, 2012, plaintiff was with her friends at the "Big Chill," a business

located in the downtown of Chattanooga. An employee of the Big Chill assaulted plaintiff.

12.   Cooley approached plaintiff and told plaintiff and her friends to leave the Big

Chill.

13.   Plaintiff insisted Cooley take her report of the assault by the Big Chill employee.

14.   Cooley refused plaintiff's request.

15.   Plaintiff told Cooley she was going to call for another officer to take her report.

16.   Without warning, Cooley grabbed plaintiff's left arm, and jerked her left arm

upward. Cooley's actions were the direct and proximate cause of the injury, pain and mental

suffering plaintiff suffered thereafter. Other City officers were present, and observed Cooley's

actions but did nothing to stop Cooley or report his actions to higher authority.

17.   Without probable cause and solely from anger at plaintiff's requests to speak to

another officer to take her report, Cooley charged plaintiff with disorderly conduct and assault.

18.   On August 23, 2012, the State of Tennessee, through the office of the District

Attorney, dismissed the charges Cooley brought against plaintiff, and the Court of General

Sessions entered a final judgment of dismissal on February 13, 2013. Plaintiff avers the authority

set forth in the US Supreme Court decision of Heck v. Humphries set the applicable and

operative statute of limitation date to begin at August 23, 2012, but no later than February 13,

2013.

**City's Liability:**

19.    The City has a pattern of overlooking or providing excuses and reasons to justify the misconduct of its officers and civilian employees in order to retain, promote, and/or re-hire officers.

a.    The City, through its police command officers, refused to relieve former assistant police chief Jeanie Snyder of all duties after three much publicized events wherein [1] she appeared under the influence while armed and in a Gwinnett County, Georgia mall whereupon City police officers drove to said county and took Snyder back to Tennessee; [2] was wandering about in a Marion County wood which required a large law enforcement response to find her at much costs to the Tennessee taxpayers; [3] found unconscious at her home due to prescription drug use after she failed to report for a staff meeting.

b.    The City refused to follow the recommendations of its own Internal Affairs unit to discipline Captain Edwin McPherson for untruthfulness after the investigators found McPherson took actions to interfere with a murder investigation that involved his niece as a suspect. The City's command "cleared" McPherson without review by an entity outside of the police department.

c.    The City refused to fire Detective Karl Fields after he made false claims that he was a victim of a carjacking in order to cover up that he wrecked his car while drunk and shooting his gun. The City allowed Fields to remain as a homicide investigator, despite his obvious deceit that could have caused an innocent person to be charged with carjacking.

d. The City fired, then, rehired officer Steven Campbell for his part in the infamous beating of two handcuffed suspects in the parking lot of Kanku's gas station, which resulted in a settled federal lawsuit the US Dist. Court in McCallum and Jones v. City of Chattanooga, et al . The City later assigned Campbell to the S.W.A.T. team for the City and assignment as an investigator/detective.

e. The City suspended, but did not fire Officer Mike Wenger for his unlawful assault on one of the two men in the aforesaid Kanku's incident which resulted in Trent Jones' receiving a facial fracture. Rather than fire Wenger, the City later promoted Wenger to a detective position.

f. The City refused to fire former detective Kenneth Freeman for his video-recorded assault of a 71 year old greeter at Wal-Mart, which resulted in in Walker v. City of Chattanooga in federal court. The video also captured Freeman shoving a person who came to the aid of the greeter through a glass door. Edwin McPherson was present and stood by. Despite the clear video evidence of the assault, and video evidence of Freeman assaulting an attorney in the Hamilton County Courthouse, the City allowed Freeman to remain a detective. Freeman had a long history of citizen and internal complaints that placed the City on notice of his propensity for misconduct. Despite the long history and the video evidence of assault on two persons at Wal-mart and the attorney (Lloyd Levitt), it wasn't until a non-video recorded claim of domestic assault against Freeman arose that the City finally terminated Freeman's employment. The City never took action to address McPherson's failure to render aid to the greeter or to stop Freeman from injuring the greeter.

g.      The City fired officers Steven Miller and Daniel Gibbs for macing then placing a homeless man, Robert Williams ("Williams"), in the trunk of Gibbs' police car and transporting Williams to Camp Jordan Park in East Ridge, where the officers left Williams by the side of the road. Despite firing these two officers for excessive force and lying about the incident the City rehired allowed these two officers to return to their employment as police officers.

h.      The City will not take action against its officers for misconduct unless such action has overwhelming evidence. Including the video-recorded incidents stated herein, the City took action against Officer David Campbell only after video evidence showed Campbell abusing William Boston.

i.      The City routinely refuses to allow litigants to review the complete closed files of internal affairs investigations to determine what percent of complaints by citizens against officers involved use of force. In Luther v. City of Chattanooga, filed in this Court in case number 1:12-cv-00345, the City did sustain a violation of "improper procedure" against defendant Blumenberg, but cleared him of excessive force. A finding of excessive force carries greater liability under § 1983, and the City has used findings of non-excessive force misconduct in past force and arrest incidents in the following matters (stated above): Steven Campbell; David Campbell; and Blumenberg.

j.      The City was aware of repeat excessive force complaints against Cooley, but cleared him each time and allowed him to remain on full duty despite the repeated excessive force complaints.

~ 7 ~

k.     CPD Sgt. D. Turner ("Turner"), was the supervisor of Cooley. The City requires its officers to write use of force reports whenever its officers use force on a suspect. Since Turner became the supervisor for Cooley, Turner's shift saw a large increase in the use of force. This high and sudden rise in the use of force put the City on notice that its officers were not properly supervised and trained, and thus constituted deliberate indifference that was the direct and proximate cause of plaintiff's injuries.

l.     The City had possession of a video of an incident, which is the subject of Tatum v. City of Chattanooga, et al. (pending in US District Court) and which shows Cooley and two other officers beating Tatum. Despite having this overwhelming evidence, the City allowed Cooley, and the two other officers to remain on full duty as police officers. Not until Tatum made an internal affairs complaint in September 2012 and not until the City obtained a conviction of Tatum for assault after withholding the entire video evidence from plaintiff's defense counsel (Mike Acuff) did the City take action against Cooley and one of the two other officers (Sean Emmer) in the form of termination of employment.

**Paul Page**

m.     Former Mayor Ron Littlefield ("Littlefield") hired his friend Paul Page as the director of the City's General Services.

n.     While employed as an agent for the City, Page was actively engaged in acts of sexual harassment against female City employees and one non-employee.

o.     Despite Littlefield's full knowledge of Page's misconduct, the City failed to take action to stop Page's wrongdoing beyond a meager warning and requirement

~ 8 ~

p.      Rather than take action against Page, the City terminated the employment of one of the women who complained against Page.

q.      Despite a finding by the EEOC that Page's misbehavior (which included comments to the female employees about their breasts and comments about sex acts) constituted violations of federal law, the City stood by Page and refused to fire him.

**The Timothy Hicks – Emmer Incident:**

r.      In 2011, former officer Sean Emmer and other officers arrived at Track 29, a downtown music venue in response to calls from Track 29 security staff.

s.      One of the officers approached Richard Wetherbee from behind and without warning, used a taser on him.

t.      Emmer came behind Timothy Hicks ("Hicks") and without warning, placed a chokehold on Hicks.

u.      Hicks was unaware a police officer placed the chokehold on him, and attempted to defend against the attack.

v.      Emmer and another officer slammed Hicks to the floor.

w.      Emmer straddled Hicks, and punched Hicks in the face and bashed Hicks' head on the concrete.

x.      The other officer held Hicks down and did nothing to stop Emmer's assault.

y.      The group of people who watched began to "boo" Emmer's actions.

z.      Emmer slapped Hicks' face to make Hicks "come to."

aa.      At one point, Emmer pulled his service weapon and pointed it at the group and told them to stay back.

~ 9 ~

bb.     Other officers on the scene also directed the onlookers back and did nothing to stop Emmer's assault.

cc.     Emmer and another officer dragged Hicks by his ankles to a police car.

dd.     The transporting officers "screen tested" Hicks on the way to the hospital in a police car.

ee.     "Screen test" is a term to denote how police with a handcuffed and un-seat-belted arrestee in the back seat speed up then slow suddenly, which throws the arrestee into the screen that divides the officers in the front and the arrestee.

ff.     Hicks suffered seven fractures to bones in his face.

gg.     The very next day, Chief of Police Bobby Dodd ("Dodd") spoke publicly about how Hicks "sucker punched" Emmer, and Hicks deserved "the toughest penalty."

hh.     The City never conducted an investigation of the event with Hicks before Dodd publicly cleared all the officers involved.

ii.     Dodd and Internal Affairs investigators were aware Emmer had a propensity to use excessive force in that Emmer had three excessive force complaints even before the Hicks matter.

jj.     In one incident, where Emmer punched a drunken man, which split the man's tongue, Emmer explained his actions by stating, "My adrenaline gets going."

ll.     In each of the three cases and the Hicks matter, fellow officers collaborated Emmer's reasons for the force he used, and the City exonerated Emmer each time.

~ 10 ~

20. The failure of the City's highest ranking police officers to remove officers from duty when they exhibit gross misconduct, exhibit odd behavior, and allow officers fired to later return to their jobs or even promote them later constitutes a deliberate indifference to the public at large and created the atmosphere that allowed the defendants in the case at bar to believe their conduct would go unpunished and was the direct and proximate cause of plaintiff's injuries.

a. Such conduct by the City through its police command ranks establishes the City cares more about its officers than the public at large, even when its officers persist in conduct that reflects inability to perform duties, and malfeasance of performance.

b. Such conduct by the City through its police command ranks establishes the City cares more about its officers than the public at large, despite recommendations for discipline by its own police personnel tasked with investigating police misconduct.

c. Such conduct by the City through its police command ranks establishes the City allows "procedures" to clear officers charged with misconduct that are solely in the hands of the police command rank officers, and is tantamount to a sham of internal oversight of its police personnel.

21. The City's failure to take prompt action against Page, and its retaliation against the women who complained about Page, constitutes a deliberate indifference to the public at large and created the atmosphere that allowed Cooley to believe his conduct would go unpunished and was the direct and proximate cause of plaintiff's injuries.

22. The failure of the City to discipline Page, a friend of the former mayor, reveals a systemic culture of depravity and indifference to the laws of the land and the rights of all persons

~ 11 ~

within the corporate limits of the City of Chattanooga that permeated to all levels of employees of the City a belief that misconduct was tolerated by the highest levels of City government and thus, would not be reported and punished, and such indifference was the direct and proximate cause of the Plaintiff's injuries and suffering.

> a. The refusal of the City to take action against Page, and its retaliation against the female employee, and the subsequent defense of Page through its Office of the City Attorney (specifically attorney Ken Fritz) against the EEOC's overwhelming evidence of sexual misconduct by Page created a parallel culture of fear of reprisal among those officers and employees who would report the malfeasance of Cooley as stated herein.

> b. Such a culture solidified the "wall of silence" Plaintiff has set forth in this Complaint by all officers named in this Complaint, and is the direct and proximate cause of Plaintiff's injuries and suffering.

23. The City's training in the use of force continuum and its procedural policies do not mirror one another. The conflicts of the training and policies on the use of force created an ambiguity that took the supervisory and training obligations from the City and placed them in the hands of individual officers. Such lack of oversight constitutes the deliberate indifference of the City and was the direct and proximate cause of plaintiff's injuries.

## Count One:
## Violation of Civil Rights Under
## Color of Law 42 U.S.C. §1983

24. Pursuant to Rule 10 of the Tennessee Rules of Civil Procedure, the Plaintiff reasserts and incorporates fully all averments stated in this Complaint as if fully set out herein.

~ 12 ~

25.     The force used by Cooley amounted to unlawful force that carried a high risk of causing bodily harm, was unnecessary and unreasonable under the circumstances, was without probable cause, and was the direct and proximate cause of Plaintiff's injuries, needless suffering, and loss of enjoyment of life. No reasonable officer would have acted as Cooley.

26.     Cooley acted under color of law and his negligence and intentional acts deprived the plaintiff her rights secured to her under the United States Constitution to be free from:

> a.     Unreasonable seizures of persons without due process of law and deprivation of Equal Protection under the law.

27.     The City had a duty of care to the plaintiff to ensure that is agents were properly trained in the use of force, to train and ensure its supervisors do not overlook sudden rises in the use of force by its police officer employees, and to prevent officer abuse of suspects. This failure constitutes deliberate indifference by the City and was the direct and proximate cause of plaintiff's injuries.

28.     The City had a duty to properly supervise its officers and to ensure its supervisory officers do not condone unnecessary force by officers in their dealings with the public. This failure constitutes deliberate indifference by the City and was the direct and proximate cause of plaintiff's injuries.

29.     The City had a duty to properly investigate and remove officers who display erratic behavior, unwarranted aggression towards citizens, and who concoct and fabricate false police reports that may have led to the prosecution of an innocent man. This failure constitutes deliberate indifference by the City and was the direct and proximate cause of plaintiff's injuries.

30.     Consequently, the actions stated in this Complaint created an environment that allowed Cooley to believe his abusive behavior would not be properly monitored, investigated,

nor punished. Or if punished, done so lightly or, if terminated, would get re-hired at a later date. And as stated herein, the City's antics with Paul Page created an atmosphere of fear among officers who would report misconduct as stated herein. These failures constitute deliberate indifference by the City and were the direct and proximate cause of plaintiff's injuries.

31. Plaintiff avers that such actions and omissions on the part of the defendants constitute a violation of § 1983 and were done to deprive the Plaintiff of the following rights established under the United States Constitution:

> a. The right to be free from unreasonable seizures secured to her by the Fourth and Fourteenth Amendments;
>
> b. The right to Equal Protection of law.

32. Cooley committed these actions with actual malice toward the Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of the Plaintiff. Thus the Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

33. The omissions of the City constitute deliberate indifference toward the Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of the Plaintiff. This failure constitutes deliberate indifference and was the direct and proximate cause of plaintiff's injuries. Thus the Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

## Count Two:
## Malicious prosecution

34. Plaintiff incorporates fully all averments stated in this Complaint as if fully set out herein and avers that such actions and omissions on the part of Cooley constitutes a violation of this common law of Tennessee. In addition, Cooley prosecuted Plaintiff for the crime of

~ 14 ~

disorderly conduct and assault without probable cause, and out of anger for her insistence to speak to another officer rather than Cooley vindication of a public right.

**WHEREFORE**, the plaintiff demands judgment against the defendants and requests the following relief:

A.    The Court to award compensatory damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000) and punitive damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000);

C.    That the Court award attorney's fees;

D.    That the Court award costs, and discretionary costs;

E.    Any other relief the Court may deem fit and proper;

F.    Any other relief the Court may deem fit and proper pursuant to 42 U.S.C. §1988, and

G.    Allow a jury trial on all issues.

Respectfully submitted,

By: _____

**ROBIN RUBEN FLORES**
TENN. BPR #20751
GA. STATE BAR #200745
Attorney for Plaintiff
4110-A Brainerd Road
Chattanooga, TN 37411
423 / 267-1575  fax 267-2703
robinflores@comcast.net

Certificate of Service
I certify I delivered a copy of this Amended Complaint to the persons listed via the USPS:
Keith Reisman, Esq., 100 E. 11th Street, Suite 200, Chattanooga, TN 37402
Adam Cooley c/o Jonathan Guthrie, Esq., 537 Market Street, Suite 202 Market Court Chattanooga, TN 37402-1225

July 15, 2013                                          Robin R. Flores

## CIRCUIT COURT FOR HAMILTON COUNTY
## STATE TENNESSEE

JAMIKA C. MOBLEY,                §
                                 §
            *Plaintiff,*          §        No. 13-c-917
                                 §
~v~                              §        **JURY DEMAND**
                                 §
CITY OF CHATTANOOGA, *et al.,*    §
                                 §
            *Defendants.*         §



### AFFIDAVIT OF SERVICE
### CITY OF CHATTANOOGA

1.      I am the affiant, Robin R. Flores. I have first-hand knowledge of the facts I state in this affidavit. I am competent to make this affidavit.

2.      On July 12, 2013, I filed the Complaint in this matter, and I served the City of Chattanooga a copy of the Summons and Complaint through Phillip Noblett, Esq. on the same day.

3.      I have attached the return of the summons to this affidavit.

AFFIANT STATES NOTHING FURTHER

ROBIN R. FLORES

**State of Tennessee**
**Hamilton County**

Sworn to before me this 30 day of July 2013.

Notary Public

My commission expires  8·21·15

BECKY B.
STATE OF TENNESSEE
NOTARY PUBLIC
HAMILTON COUNTY

## CIRCUIT COURT FOR HAMILTON COUNTY
## STATE OF TENNESSEE

FILED IN OFFICE

2013 JUL 12 PM 2: 22

PAULA T. THOMPSON, CLERK

JAMIKA A MOBLEY,      §
        *Plaintiff,*     §
        §
~v~         §
        §
CITY OF CHATTANOOGA,     §
*et al.,*         §
        *Defendants.*     §

No. 13 C 917 DC

## SUMMONS

**To:**     City of Chattanooga
c/o Wade Hinton, Esq.
100 East 11st Street, Suite 200
Chattanooga, TN 37402

You are hereby summoned to answer and make defense to a Bill of Complaint, which has been filed in the Circuit Court for Hamilton County, Tennessee in the above styled case. Your defense to this Complaint must be filed in the office of the Clerk of Court for Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

WITNESSED and issued this the 12 day of July , 20 13

**Paula Thompson, Clerk**

BY: _____
DEPUTY CLERK

Attorneys for Plaintiff: ROBIN RUBEN FLORES
4110 BRAINERD ROAD, CHATTANOOGA, TN 37411

Plaintiff's Address:_____

Received this _____ day of _____, 20___.

/S/_____
DEPUTY SHERIFF



SERVICE RETURN

## CIRCUIT COURT FOR HAMILTON COUNTY
### State of Tennessee

JAMIKA C. MOBLEY,

§
§
*Plaintiff,*  §     No. 13-c-917
§
~v~  §     **JURY DEMAND**
§
CITY OF CHATTANOOGA, *et al.,*  §
§
*Defendants.*  §



## AFFIDAVIT OF SERVICE
## DEFENDANT ADAM COOLEY

1.     I am the affiant, Robin R. Flores. I have first-hand knowledge of the facts I state in this affidavit. I am competent to make this affidavit.

2.     On July 12, 2013, I filed the Complaint in this matter. On July 18, 2013, I obtained service of process upon the defendant, Adam Cooley, by certified mail, return receipt requested, through the defendant's agent, Gail Boots, at the office of the defendant's attorney, Jonathan Guthrie, Esq.

3.     I have attached the return of the summons and the original certified mail receipt to this affidavit.

AFFIANT STATES NOTHING FURTHER

ROBIN R. FLORES

**State of Tennessee**
**Hamilton County**

Sworn to before me this 30 day of July 2013.

Notary Public
My commission expires  8-21-13

Docket No: 13-C-917

FILED IN OFFICE
DATE/TIME ___JULY 30, 2013___
PAULA T. THOMPSON, CLERK
BY _____HN_____
_____D.C

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ At     this card to the back of the mailpiece,
or on the front if space permits.

A. Signature
X  *Gail Boots*     ☐ Agent
                    ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
GAIL  BOOTS                        7-18-13

1. Article Addressed to:

Adam Cooley
c/o Jonathan Guthrie, Esq
537 Market Street
Suite 202   Market Court
Chattanooga, TN   37402-1225

**SCANNED**

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:         ☐ No

DATE/TIME JULY 30, 2013
PAULA T. THOMPSON, CLERK
BY HN
D.C

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☑ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)
7009 3410 0000 4769 0206

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

# CIRCUIT COURT FOR HAMILTON COUNTY
## STATE OF TENNESSEE

LED IN OFFICE
2013 JUL 12 PM 2: 21

PAULA T. THOMPSON, CLERK

No. 13 C 917    BY: _____ DC

JAMIKA A MOBLEY,  §
          *Plaintiff,*  §
            §
~v~  §
            §
CITY OF CHATTANOOGA,  §
*et al.,*  §
          *Defendants.*  §

## SUMMONS

**To:**     Adam Cooley
        c/o Jonathan Guthrie, Esq.
        537 Market Street
        Suite 202 Market Court
        Chattanooga, TN 37402-1225

       You are hereby summoned to answer and make defense to a Bill of Complaint, which has been filed in the Circuit Court for Hamilton County, Tennessee in the above styled case. Your defense to this Complaint must be filed in the office of the Clerk of Court for Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

WITNESSED and issued this the ___12___ day of ___July___, 20_13_.

                **Paula Thompson, Clerk**

                BY: _____
                    DEPUTY CLERK

Attorneys for Plaintiff: __ROBIN RUBEN FLORES__
                __4110 BRAINERD ROAD, CHATTANOOGA, TN 37411__

Plaintiff's Address: _____

       Received this _____ day of _____, 20___.

          /S/ _____
                DEPUTY SHERIFF



**SERVICE RETURN**

I, Paula Thompson, Clerk of Court, in and for the State and County aforesaid, hereby certify that the within and foregoing is a true and correct copy of the original writ of summons issued in this case.

**Paula Thompson, Clerk**

BY: _____ D.C.

## OFFICER'S RETURN

I certify that I served this summons, together with the Complaint as follows:

❑    On, _____, 20___, I delivered a copy of the summons and Complaint to the

Defendant. _____

_____❑

Failed to serve this summons within 30 days because:

_____

**Jim Hammond, Sheriff:**

_____
DEPUTY SHERIFF

## Clerk's Return

I hereby acknowledge and accept service of the within summons and receive copy of same, this
_____ day of _____, 20____.

_____
DEFENDANT

**Paula Thompson, Clerk**

BY: _____ D.C.

### NOTICE TO DEFENDANT(S)
Tennessee law provides a four thousand ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks and other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should and of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served a true and correct copy of the

foregoing pleading by depositing same in the United States mail, postage prepaid, and addressed

to the following:

Robin Ruben Flores, Esq.
4110-A Brainerd Road
Chattanooga, Tennessee 37411

This 8th day of August, 2013.

Keith J. Reisman

City of Chattanooga, Tennessee
Office of the City Attorney
100 E. 11th Street, Suite 200
Chattanooga, Tennessee 37402
(423) 643-8250
Reisman_K@chattanooga.gov

4